435 Vermont Street

Brooklyn, NY 11207

(601) 646-2857

(347) 773-8821

Kennethmoore43@hotmail.com



**HAND DELIVERED**

October 27, 2014

Honorable John Gleeson

United States District Court

Eastern District of New York

225 Cadman Plaza East

Brooklyn, NY 11207

Ref #: Kenneth Moore v NYS Parole Officer Dana Newton & NYC Police Officer Juner Cevallos 14 CV 5524

Dear Judge Gleeson:

Petitioner requests that the court accept this Response/Civil Rights complaint in letter form. Petitioner also requests that the court convert his Writ of Habeas Corpus into a Civil Rights Complaint, pursuant to 42 USC 1983. Lastly, petitioner request that Defendant Pinnock be dropped and New York City Police Officer Juner Cevallos be added as a Defendant in this case.

Petitioner argues that his release from Riker's Island did not extinguish the case or controversy, and that he has standing to challenge his most recent detention at Riker's Island insomuch that such detention violated several of his rights as guaranteed by the United States Constitution.

This case arises under and is brought pursuant to 42 USC 1983 to remedy the deprivation, under color of state law, of rights guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. This court has jurisdiction over this action pursuant to 28 USC 1331 & 1343.

This cause of action arose in the Eastern District of New York. Therefore, venue is proper under 28 USC 1391 (b).

Petitioner has filed other lawsuits dealing with the same set of facts involved in this action. Namely, a Federal Writ of Habeas Corpus (See paragraph 16), which petitioner respectfully request be converted into a civil rights action pursuant to 42 USC 1983. Furthermore, petitioner had filed a State Writ of Habeas Corpus (See paragraph 18).

Petitioner brings this lawsuit against Defendants in their individual capacity.

At all relevant times herein, Defendants were persons for purposes of 42 USC 1983 and acted under color of law to deprive petitioner of his Constitutional Rights, as set forth more fully below.

### Statement of Facts

Petitioner swears under penalty of perjury that what follows is true and correct.

1. On October 1, 2013, petitioner was released from Queensboro Correctional Facility, having served a 6 month time assessment for a violation of his parole release. Petitioner was to serve the remaining portion of his sentence on Post Release Supervision. Petitioner's sentence was due to expire on July 31, 2014.

2. On April 12, 2014, Defendant Cevallos arrested petitioner for supposedly Criminal Possession of a Controlled Substance in the seventh degree, Penal Law 220.03.

3. Petitioner hereby denies ever being in actual or constructive possession of a controlled substance as delineated in the criminal complaint (See Exhibit A).

4. On or about April 14, 2014, petitioner was arraigned on the criminal complaint. Thereafter, petitioner was released on his own recognizance.

5. On or about April 14, 2104, petitioner reported his arrest to a parole officer who was covering for his own parole officer, Defendant Newton.

6. During the time between his arrest on the criminal charge (April 12, 2014) and his arrest on parole charge (June 16, 2014) petitioner started reporting to his parole officer (Defendant Newton) on a weekly basis as opposed to the bi-weekly basis he had been complying with.

7. Because of his arrest, Defendant Newton gave petitioner an ultimatum. During an office report visit, on or about April 21, 2014, Defendant Newton told petitioner to voluntarily enter Edgecomb Correctional Facility. Edgecomb is a 45 day residential substance abuse treatment program, operated by NYS Division of Parole. Petitioner declined, reasoning that: 1) He was innocent of the criminal charge; 2) He didn't have a problem with substance use or abuse. If Defendant Newton would had ordered petitioner into Edgecomb he would have been obliged to comply.

8. On another office visit shortly after her ultimatum Defendant Newton informed petitioner that because of his opposition to Edgecomb the circumstances surrounding his arrest were being investigated.

9. On June 16, 2014, Defendant Newton arrested petitioner. The one charged parole violation mirrored the criminal charge which was pending in Brooklyn Criminal Court (See Exhibit B). Petitioner remained released on his own recognizance in relation to the criminal charge notwithstanding this latest arrest on a parole violation charge.

10. During his arrest, petitioner asked Defendant Newton why he was being arrested since there was no change in his circumstances subsequent to his arrest on the criminal charge of April 12, 2014. Defendant Newton responded by informing petitioner she had made contact with Defendant Cevallos and had arranged a time for him to testify against petitioner. Making such arrangements was the extent of Defendant's Newton's so called investigation (See Paragraph 8). Defendant Newton failed to practice due diligence in that she could have found out that there was never any physical evidence; A zip lock bag of crack cocaine that petitioner allegedly threw to the ground (See Exhibit A).

11. On June 26, 2014, Defendant Newton convened a Preliminary Parole Revocation hearing. During said hearing Defendant Newton stated, on the record that if petitioner had entered Edgecomb she would have not had charged him with violating a condition of his parole release.

12. In addition to Defendant Cevallos two other NYC Police Officers testified at the preliminary hearing. Defendant's Cevallos's testimony reiterated the lie delineated in the criminal complaint; That he saw petitioner throw a zip lock bag of crack cocaine to the ground. One of the other two Officers testified that he did not know if the zip lock bag of crack cocaine petitioner allegedly threw was sent to the police laboratory for analysis. Since petitioner never possessed such zip lock bag of crack cocaine it would be impossible to send it to the lab because there was nothing to send.

13. In any event, notwithstanding a lack of hard evidence, probable cause based on the testimony of the three officers was found. And petitioner's unconstitutional detention continued pending a Final Parole Revocation hearing.

14. On July 9, 2014, petitioner attended his final hearing. Since petitioner only had 22 days left until the maximum expiration of his sentence ALJ Casey informed the Parole Specialist that he was giving the Division 2 weeks to make ready a case against petitioner. ALJ Casey also told the Specialist that if the Division was not ready in 2 weeks' time he was going to cancel the delinquency. Thereby requiring Defendant Newton to effectuate petitioner's release from custody by the maximum expiration of his underlying sentence, July 31, 2014.

15. Two weeks later, on July 23, 2014, petitioner's final hearing was re-convened. The Division was not ready to proceed, thus requiring Defendant Newton to effectuate petitioner's release by July 31, 2014.

16. When July 31, 2014, arrived and no movement on petitioner's release was in the offing, petitioner had no other choice but to believe that Defendant Newton was retaliating against him because of an ongoing civil rights action in the Western District. Petitioner just couldn't believe that Defendant Newton forget that his sentence had expired and the only other reason petitioner could think of regarding his continued unconstitutional detention was that he was the subject of retaliation stemming from his law suit in the Western District. Accordingly, petitioner sent the Western District a Writ of Habeas Corpus, arguing that he was entitled to immediate release because his maximum expiration date had come and his continued detention constituted retaliation.

17. After July 31, 2014, petitioner began an all-out effort to: 1) Find out any information regarding his continued detention past the maximum expiration of his sentence, 2) To actually be released from his unconstitutional detention. With that being the case petitioner and his father called anyone who they thought may be of help. Included in those efforts were phone calls placed to Defendant Newton and other employees of the Division of Parole, including Defendant's supervisor. Petitioner also sent Defendant Newton a copy of his Western District Writ, and he wrote the chairwomen of the Division, informing her of his plight. Petitioner's father called an Assembly Man, lawyers, and researched the situation via the internet. All of petitioner's efforts and lobbying were of no avail. He was being held past his maximum expiration date and nobody would explain why.

18. As time went on petitioner began to feel distraught. Then on or about August 20, 2014, petitioner's parole attorney filed a NYS Writ of Habeas Corpus. Said Writ relied heavily on a Second Circuit case, Calhoun v NYS Div. of Parole 999 F2d 647 1993. Said case held that "the state may not constitutionally hold defendant beyond his original, unadjusted, maximum expiration date unless a final hearing would have been impracticable".

19. It should be noted that all through petitioner's detention the NYC Dept. of Corrections would transport him to Brooklyn Criminal Court for the purpose of litigating the criminal charge.

20. On September 5, 2014, petitioner was produced for another Final Parole Revocation Hearing. At this hearing the parole charge was dismissed, citing a lack of evidence.

21. On September 9, 2014, petitioner was finally released from Riker's Island.

22. On October 22, 2014, the criminal charge was dismissed also.

## Causes of Action

1. Defendant Cevallos: 4th, 5th, & 14th Amendment Violations-Malicious Prosecution-By arresting petitioner Defendant Cevallos started a criminal proceeding against petitioner (See paragraph 2); That proceeding terminated in petitioners favor (See paragraph 22); There was no probable cause to arrest petitioner (See paragraph 3); The proceeding was instituted with malice (See paragraph 12 Defendant Cevallos "lied" on the criminal complaint).

2. Defendant Cevallos: 4th, 5th, & 14th Amendment Violations-False Arrest- By arresting petitioner Defendant Cevallos intended to confine petitioner (See paragraph 2); Petitioner was aware of the confinement; Petitioner did not consent to the confinement; The confinement was not otherwise privileged because there was no warrant for petitioner's arrest.

3.  Defendant Newton: 4th, 5th, & 14th Amendment Violations-Malicious Prosecution-By arresting petitioner Defendant Newton started a parole revocation proceeding against petitioner (See paragraph 9); That proceeding terminated in petitioners favor (See paragraph 20); There was no probable cause for the proceeding (If Defendant Newton's investigation would have been more than perfunctory she would have realized that there was no evidence against petitioner. She didn't have the right to rely on Defendant Cevallos's lie when she was in a position to check on the facts herself. Furthermore, the officer's testimony at the preliminary hearing should have alarmed her in that he testified that he had no knowledge of the drugs being sent to the police lab. Such testimony was code for there no drugs/evidence to send to the lab. Lastly, arranging a time for the police to testify at the preliminary hearing does not constitute an investigation. So what petitioner is saying is that Defendant Newton was derelict insomuch that she relied on Defendant Cevallos's lie when she had the wherewithal to check the facts herself. Moreover, if probable cause ever existed it dissipated when the officer testified that he had no knowledge of the drugs/evidence being sent to the lab; Malice is evident by Defendant Newton not moving to effectuate petitioner's release once he reached the maximum expiration of his underlying sentence

4.  Defendant Newton: 4th, 5th, & 14th Amendment Violations-False Imprisonment-By arresting petitioner Defendant Newton intended to confine petitioner (See paragraph 9); Petitioner was aware of his confinement; Petitioner did not consent to the confinement; Notwithstanding the fact that Defendant Newton had a warrant for petitioner's arrest such warrant was defective in that it was derived from incomplete and/or bias investigative work, i.e.-there was never probable cause to arrest petitioner for either a criminal charge or parole charge.

5.  Defendant Newton: 4th, 5th & 14th Amendment Violations-Abuse of Process-Defendant Newton commenced a regularly issued process against petitioner, she started a parole revocation proceeding against petitioner; Defendant Newton's intended to harm petitioner insomuch that she wanted petitioner's parole revoked; Defendant Newton's collateral objective, which was outside the legitimate ends of a parole revocation process, to punish petitioner because he was in disagreement with her over Edgecomb (See paragraphs 7, 8, & 11). If Defendant Newton would have given petitioner a special condition to enter Edgecomb he would have complied.

6.  Defendant Newton: 4th, 5th, 8th, & 14th Amendment Violations-Cruel and Unusual Punishment and Due Process-Defendant Newton illegally extended petitioner's sentence by 39 days. Petitioner's sentence was to expire on July 31, 2014. Petitioner was not released from Riker's Island until September 9, 2014.

7.  Petitioner seeks compensatory damages of $3,000 a day for each day of his unconstitutional detention, from June 16, 2014 to September 9, 2014. (84 days @ $3,000 a day = $ 252,000)

8.  Petitioner sees punitive damages of $3,000 a day for each day he was unconstitutionally detained past the maximum expiration of his sentence, from July 31, 2014 to September 9, 2014. (39 days @ $3000 a day = $117,000)

9. Petitioner seeks total damages of $369,000.

In closing, petitioner once again respectfully request that his Writ of Habeas Corpus be converted into a Civil Rights action, pursuant to 42 USC 1983. Alternatively, petitioner request that his Writ of Habeas Corpus be withdrawn and he be granted leave to immediately proffer a Civil Rights Complaint, pursuant to 42 USC 1983.

Respectfully Submitted,

*Kenneth Moore*

Kenneth Moore

CC: Ms. Audrey Spekotor    **HAND DELIVERED**

Assistant US Attorney

271 Cadman Plaza East

Brooklyn, NY 11207

CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR            KINGS

THE PEOPLE OF THE STATE OF NEW YORK     2014KN026618     STATE OF NEW YORK
                                                         COUNTY OF KINGS

-v-

KENNETH MOORE

DETECTIVE EVAGELOS DIMITRAKAKIS, SHIELD NO. ____, __ ____ COMMAND, SAYS THAT ON OR ABOUT APRIL 12, 2014 AT APPROXIMATELY 08:20 PM OPPOSITE OF 412 VERMONT STREET, COUNTY OF KINGS, STATE OF NEW YORK,

THE DEFENDANT COMMITTED THE OFFENSE(S) OF:

PL 220.03              CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE IN
                       THE SEVENTH DEGREE

IN THAT THE DEFENDANT DID:

KNOWINGLY AND UNLAWFULLY POSSESS A CONTROLLED SUBSTANCE.

THE SOURCE OF DEPONENT'S INFORMATION AND THE GROUNDS FOR DEPONENT'S BELIEF ARE AS FOLLOWS:

DEPONENT IS INFORMED BY POLICE OFFICER JUNER CEVALLOS, SHIELD NO. 31208, OF 547 COMMAND, THAT, AT THE ABOVE TIME AND PLACE, WHICH WAS WITHIN 1000 FEET OF PUBLIC SCHOOL 149, INFORMANT OBSERVED DEFENDANT IN POSSESSION OF A QUANTITY OF CRACK COCAINE IN THAT INFORMANT DID RECOVER A ZIPLOCK BAG OF CRACK COCAINE FROM THE GROUND WHERE INFORMANT OBSERVED DEFENDANT THROW SAID ZIPLOCK BAG OF CRACK COCAINE.

DEPONENT STATES THAT DEPONENT HAS HAD PROFESSIONAL TRAINING AS A POLICE OFFICER IN THE IDENTIFICATION OF CRACK COCAINE, HAS PREVIOUSLY MADE ARRESTS FOR THE CRIMINAL POSSESSION OF CRACK COCAINE, HAS PREVIOUSLY SEIZED CRACK COCAINE, WHICH WAS DETERMINED TO BE SUCH BY A CHEMICAL ANALYSIS BY THE POLICE DEPARTMENT LABORATORY, AND THE SUBSTANCE IN THIS CASE POSSESSES THE SAME PHYSICAL CHARACTERISTICS AS SUCH PREVIOUSLY CHEMICALLY IDENTIFIED SUBSTANCE, BY PROFESSIONAL TRAINING AND EXPERIENCE AS A POLICE OFFICER, IS FAMILIAR WITH COMMON METHODS OF PACKAGING CRACK COCAINE, AND THE ZIPLOCK BAG USED TO PACKAGE THE SUBSTANCE IN THIS CASE IS A COMMONLY USED METHOD OF PACKAGING SUCH SUBSTANCE, AND THAT A FIELD TEST PERFORMED BY DEPONENT CONFIRMED THE SUBSTANCE IN THE ZIPLOCK BAG WAS CRACK COCAINE.

BASED ON THE FOREGOING, IN DEPONENT'S OPINION, THE SUBSTANCE IN THIS CASE IS CRACK COCAINE.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

4/13/14
DATE                          SIGNATURE

*Exhibit A*

Printed: 04/13/2014 09:58    K14632802    Arrested: 04/12/2014 10:20

FORM 4003(6/82)

## STATE OF NEW YORK - EXECUTIVE DEPARTMENT - DIVISION OF PAROLE

## VIOLATION OF RELEASE REPORT

**Warrant Issued**_____ **No Warrant Issued**_____

| | | | |
|---|---|---|---|
| Name: | **Moore, Kenneth** | Date Released: | **10/1/13** |
| NYSID No: | **3840565J** | Max. Expiration: | **7/31/14** |
| Institution: | **Queensboro C.F.** | Date of Warrant: | 6-16-14 |
| DIN No.: | **06R-3921** | Warrant No.: | 670294 |
| Date of Birth: | **12/10/58** | Date Enforced: | |
| Offense: | **CPCS 3ʀᴅ, CSCS 3rd** | Location: | |
| | **00-00/05-06** | | |
| Sentence: | **00-00/04-06** | PVU No.: | |

Delinquency Date: 4/12/14

Since his/her release, the above named individual has violated the conditions of release in the following manner:

### Charge #1
**Kenneth Moore violated Rule #8 of the conditions of his release, in that on 4/12/14 at approximately 6:20 p.m. at 412 Vermont Street, Brooklyn, N.Y., he was in possession of a quantity of Controlled Substance to Wit: Crack/Cocaine in public view.**

*Exhibit B*