UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------

KENNETH E. MOORE,

                              Plaintiff,              **MEMORANDUM & ORDER**
                                                      14-CV-6473 (MKB) (CLP)

                    v.

DANA NEWTON,

                              Defendant.

--------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       On August 4, 2014, Plaintiff Kenneth E. Moore filed a petition for a writ of habeas

corpus in the Western District of New York, seeking immediate release from Rikers Island and

alleging that he continued to be held in custody after charges against him were dismissed.  (Pet.

for Writ of Habeas Corpus, No. 14-CV-5524 (E.D.N.Y. Aug. 4, 2014), Docket Entry No. 1.)  On

August 27, 2014, the Petition was transferred to the Eastern District of New York, where the

Honorable John Gleeson issued an order to show cause regarding Plaintiff's continued detention.

(Order to Show Cause, No. 14-CV-5524, Docket Entry No. 5.)  Respondents informed Judge

Gleeson that Plaintiff had been released from Rikers Island, and they sought to dismiss the

Petition as moot.  (Resp. Letter re Moore Pet., No. 14-CV-5524, Docket Entry No. 7.)  Plaintiff

opposed dismissal and requested that the Petition be converted into a complaint against Parole

Officer Dana Newton and Police Officer Juner Cevallos pursuant to 42 U.S.C. § 1983.  (Compl.,

Docket Entry No. 1.)[1]  On November 5, 2014, Judge Gleeson granted Plaintiff's request to

_____

       [1]  The Court refers to the above-captioned docket, No. 14-CV-6473, for the Complaint
and subsequent case filings.  The Complaint is separately enumerated in sections for Plaintiff's
"Statement of Facts" and "Causes of Action."

convert the action, and Plaintiff, proceeding *pro se*, commenced the above-captioned civil case against Defendants Newton and Cevallos[2] for false arrest, malicious prosecution, false imprisonment, abuse of process and cruel and unusual punishment in violation of Plaintiff's Fourth, Fifth, Eighth and Fourteenth Amendment rights.  (Compl., Causes of Action ¶¶ 1–9.)

On January 20, 2016, Newton filed a motion to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Def. Notice of Mot. to Dismiss, Docket Entry No. 49; Mem. in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 52.)  Judge Gleeson referred Defendant's motion to dismiss to Magistrate Judge Cheryl Pollak for a report and recommendation.[3]  (Order dated Feb. 3, 2016.)  By report and recommendation dated September 7, 2016 (the "R&R"), Judge Pollak recommended that the Court grant Defendant's motion to dismiss all of Plaintiff's claims except the claim for cruel and unusual punishment.  (R&R 3, Docket Entry No. 67.)  Judge Pollak further recommended that the Court deny Plaintiff leave to amend the Complaint.  (*Id.* at 51–55.)  On October 14, 2016, Defendant timely filed objections to the R&R.[4]  (Def. Objs. to Magistrate Judge's R&R ("Def. Objs."), Docket Entry No. 69.)  Plaintiff did not file objections to the R&R.  For the reasons set forth below, the Court adopts the R&R in its entirety as to Defendant's motion to dismiss but grants Plaintiff leave to amend the Complaint to add Eighth and Fourteenth Amendment claims against three new defendants.

---

[2]  Plaintiff settled his claims for false arrest and malicious prosecution against Cevallos, who was subsequently dismissed from the action on December 15, 2015.

[3]  On March 7, 2016, the case was reassigned to this Court.

[4]  On September 12, 2016, the parties jointly requested and received an extension of time until October 14, 2016, to file objections to the R&R.  (Docket Entry No. 68.)

## I. Background

### a. Factual background

The following facts are taken from the Complaint and are accepted as true for the purpose of deciding the motion.[5]   Plaintiff was released from Queensboro Correctional Facility on October 1, 2013, after serving six months for violating the terms of his parole.  (Compl. ¶ 1.) Plaintiff was released to a period of post-release supervision that was to expire on July 31, 2014. (*Id.*)  The terms of Plaintiff's supervised release required that he report to Parole Officer Newton on a bi-weekly basis.  (*Id.* ¶ 6.)  On April 12, 2014, Plaintiff was arrested by Officer Cevallos of the New York City Police Department and charged with criminal possession of a controlled substance.  (*Id.* ¶ 2.)  Plaintiff denies having been in possession of a controlled substance.  (*Id.* ¶ 3.)  On April 14, 2014, Plaintiff was arraigned and released on his own recognizance.  (*Id.* ¶ 4.) That day, Plaintiff reported his arrest to the parole office and, as a result, began meeting with

---

[5]   Where appropriate, the Court also refers to the transcripts of testimony from Plaintiff's parole revocation hearings and the Parole Revocation Decision Notice, both of which the Court considers incorporated into the Complaint.  (*See* R&R 15; *see also* Tr. of June 26, 2014 Prelim. Hr'g ("Prelim. Hr'g Tr."), annexed to Decl. of Neil Shevlin ("Shevlin Decl.") as Ex. C, Docket Entry No. 51; Tr. of July 9, 2014 Arraignment Hr'g ("Arraignment Tr."), annexed to Shevlin Decl. as Ex. D; Tr. of July 23, 2014 Final Parole Revocation Hr'g ("Final Hr'g Tr."), annexed to Shevlin Decl. as Ex. E; Parole Revocation Decision Notice ("Decision Notice"), annexed to Shevlin Decl. as Ex. F.)  Documents are deemed incorporated by reference when the complaint refers to them.  *See Kamholtz v. Yates Cty.*, 350 F. App'x 589, 592 (2d Cir. 2009) (the defendant's affidavits were incorporated into the plaintiff's complaint where the complaint referred to the affidavits but did not append them); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (documents incorporated where the complaint "explicitly refer[red] to and relie[d] upon" them in a § 1983 complaint); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152, 154 n. 4 (2d Cir. 2002) (contracts incorporated because the complaint was "replete with references to the contracts and request[ed] judicial interpretation of their terms").  An incorporated document is typically "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason . . . was not attached to the complaint." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).  Here, because the Complaint quotes from the transcripts of the hearings and predicates claims on the timing and nature of the hearings, the Court considers them incorporated into the Complaint.

Newton on a weekly, rather than bi-weekly, basis.  (*Id.* ¶ 5.)

On April 21, 2014, Plaintiff met with Newton, who advised him to voluntarily enter a forty-five-day residential substance abuse treatment program at Edgecombe Correctional Facility.  (*Id.* ¶ 7.)  Plaintiff refused to voluntarily enter the program, stating that he was innocent of the criminal charge and did not have a substance abuse problem.  (*Id.*)  According to Plaintiff, Newton told him shortly thereafter that because of his opposition to entering the treatment facility, Newton would be investigating the circumstances surrounding his arrest.  (*Id.* ¶ 8.)  On June 16, 2014, Newton arrested Plaintiff and charged him with violating the terms of his parole by possessing a controlled substance, based on his arrest of April 12, 2014.  (*Id.* ¶ 9.)  Plaintiff was transported to Rikers Island.  (*Id.* ¶ 21.)

On June 26, 2014, Hearing Officer Sol Chamorro conducted a preliminary parole revocation hearing at Rikers Island.  (*Id.* ¶ 11; Prelim. Hr'g Tr. at 1.)  Newton represented the New York Department of Corrections and Community Supervision ("DOCCS"), and Plaintiff was represented by an attorney from the Legal Aid Society.  (Prelim. Hr'g Tr. at 1.)  At the conclusion of the preliminary hearing, the hearing officer found probable cause that Plaintiff had been in possession of a controlled substance on April 12, 2014.  (*Id.* at 29–30.)  The hearing officer informed Plaintiff that he would receive a final hearing in "about eight business days." (*Id.* at 29.)  Plaintiff raised a concern that the final hearing would be adjourned until and beyond his upcoming maximum expiration ("ME") date of July 31, 2014, and his attorney informed him, on the record, that "[i]f that happens you can file a writ."  (*Id.* at 30–31.)

On July 9, 2014, Plaintiff attended an arraignment hearing before Administrative Law Judge Casey (the "ALJ").  (Compl. ¶ 14; Arraignment Tr. at 2.)  At that hearing, the ALJ noted

that Plaintiff was deemed delinquent as of his April 12, 2014 arrest.[6]  (Arraignment Tr. at 4.)

The ALJ informed Plaintiff that his final hearing would take place on July 23, 2014, and that if

DOCCS was not prepared to proceed on July 23, the ALJ would "order the warrant vacated."

(*Id.* at 13.)  On July 23, 2014, Plaintiff appeared for his final parole revocation hearing before the

ALJ.  (Compl. ¶ 15; Final Hr'g Tr. at 1.)  Plaintiff was represented by an attorney from the Legal

Aid Society, and DOCCS was represented by Garfield Bolton, a parole revocation specialist.

(Final Hr'g Tr. at 1.)  Bolton told the ALJ that his supervisor, Edward Delrio, had directed him to

"put in a CDME," or a "cancel delinquency and close by Maximum Expiration," for Plaintiff's

case.  (*Id.* at 2, 7.)  Citing the impending cancellation of Plaintiff's delinquency, the ALJ

adjourned Plaintiff's final parole revocation hearing for the "expeditious" submission and

processing of the dismissal, which Bolton stated would occur the following day.  (*Id.* at 5, 8.)

The ALJ assured Plaintiff that he would not permit further adjournments in the case, that

Plaintiff would be released by his ME date of July 31, 2014 and that he would "ask Mr. Delrio to

personally oversee it."  (*Id.* at 11.)  After Plaintiff left the hearing room, the ALJ, Bolton and

Plaintiff's counsel discussed the urgency of releasing Plaintiff before his ME date.[7]  (*Id.* at 12.)

---

[6]  Pursuant to section 8004.3(a)(2) of Title 9 of the New York Codes, Rules and
Regulations, a supervising parole officer or board member of the Division of Parole may declare
a parolee delinquent after one of several incidents, including "a finding of probable cause at a
preliminary hearing."  9 N.Y.C.R.R. § 8004.3(a)(2).  "When a person is alleged to have violated
the terms of his or her . . . post-release supervision and has been declared delinquent by the
parole board . . ., the declaration of delinquency shall interrupt the period of supervision or post-
release supervision as of the date of the delinquency."  N.Y. Penal Law § 70.40.  Where a
sentence has been interrupted by a declaration of delinquency, the term of the parolee's sentence
is then extended, beyond the original maximum expiration date, for a period of time equal to the
interruption period.  *See Tineo v. N.Y. State Div. of Parole,* 787 N.Y.S.2d 916 (App. Div. 2005).

[7]  The ALJ directed Bolton to expedite Plaintiff's CD/ME:
    [The ALJ]: Can we please get this guy –
    Mr. Bolton: I'll take care of it tomorrow.  I'll be in the office, the

Instead of cancelling Plaintiff's delinquency, DOCCS reassessed its position and decided to maintain the charge against Plaintiff. (*See* Compl. ¶ 20.) Plaintiff was not released on July 31, 2014. (*Id.* ¶ 16.) After July 31, 2014, Plaintiff began an "all-out effort" to be released. (*Id.* ¶ 17.) Plaintiff and his father called Newton and other unnamed employees of DOCCS, "including [Newton's] supervisor." (*Id.*) Plaintiff also wrote letters to the "chairwom[a]n of the Division," and Plaintiff's father called local representatives and attorneys. (*Id.*) Plaintiff subsequently filed the above-referenced petition for a writ of habeas corpus in the Western District of New York, arguing that he was being unconstitutionally detained beyond his ME date. (*Id.* ¶ 18.)

On September 5, 2014, Plaintiff was produced for a final parole revocation hearing. (*Id.* ¶ 20.) At that hearing, Bolton indicated that he was not prepared to proceed with the case against Plaintiff.[8] (*See generally* Decision Notice.) The ALJ refused to grant further adjournments and dismissed the charge against Plaintiff, noting that DOCCS had not provided discovery and Bolton had not been able to determine whether the arresting officer could testify. (*Id.*) Plaintiff was released from Rikers Island four days later, on September 9, 2014. (Compl. ¶ 21.) On

---

> Area Sup[ervisor] is supposed to be there –
> [The ALJ]: Well anyone can sign off on a CD right? Eddie [Delrio]'s in the office now. Can you do it today? Send the CD over to Eddie and have it signed.
> Mr. Bolton: I'll see what I can do Judge. See this –
> [The ALJ]: Alright, Mr. Bolton.
> [. . .]
> [The ALJ]: No, no, let's just stay right, no he's not, okay, but honestly I mean, cover your ears, sorry. [DOCCS] fucked this guy over alright? So you have a chance to prosecute to sort of, we can't give back the time that he was on Rikers or anything like that but let's just get him out of here as soon as possible . . . .

(Final Hr'g Tr. at 13.)

[8] DOCCS was unable to locate a transcript of this hearing.

October 22, 2014, the criminal charge against Plaintiff for possession of a controlled substance was dismissed. (*Id.* ¶ 22.)

### b. Judge Pollak's recommendations

Judge Pollak recommended that the Court grant in part and deny in part Defendant's motion to dismiss. (R&R 3.) Judge Pollak first considered Plaintiff's claims for false imprisonment, malicious prosecution and abuse of process, based on Defendant's decision to arrest and prosecute Plaintiff for his parole violation. (*Id.* at 19–34.) Finding that Newton's decision to arrest and prosecute Plaintiff was supported by probable cause, Judge Pollak concluded that Plaintiff had failed to state a claim for false imprisonment, malicious prosecution or abuse of process. (*Id.*)

Judge Pollak next examined Plaintiff's claims that by failing to intervene to secure Plaintiff's release from Rikers Island by his ME date, Defendant violated his due process rights in violation of the Fourteenth Amendment and subjected him to cruel and unusual punishment in violation of the Eighth Amendment. (*Id.* at 35–45.) Although Defendant argued that she was not personally involved in Plaintiff's alleged constitutional violations, Judge Pollak determined that "[i]f Officer Newton had a 'realistic opportunity to intervene' once she became aware that [P]laintiff had been detained beyond his sentence date," Plaintiff would have adequately alleged Defendant's personal involvement. (*Id.* at 37–38.) Thus, without further discovery, Judge Pollak recommended against dismissing Plaintiff's claims for Defendant's lack of personal involvement. (*Id.* at 38.)

Examining Plaintiff's due process claim, Judge Pollak concluded that Plaintiff possessed a liberty interest that entitled him to due process, but that Plaintiff's allegation that Defendant failed to secure his release by his ME date was a "random, unauthorized act" for which New

York provided adequate post-deprivation remedies.  (*Id.* at 45.)  Judge Pollak accordingly recommended that the Court dismiss Plaintiff's due process claim.  (*Id.*)  Judge Pollak further recommended that the Court allow Plaintiff's Eighth Amendment claim to proceed because Plaintiff had adequately alleged both that he suffered a sufficiently serious injury and that Defendant had displayed deliberate indifference to that injury.  (*Id.* at 40.)

Judge Pollak then addressed Defendant's defense of qualified immunity.  (*Id.* at 47.)  As to Plaintiff's claim that Defendant failed to effectuate his release upon his ME date, Judge Pollak declined to recommend dismissal on qualified immunity grounds because it was unclear whether a reasonable parole officer would have understood that it was unlawful to fail to release Plaintiff by his ME date, or that a parole officer possessed the authority to effectuate such a release.  (*Id.* at 50.)  Finally, Judge Pollak recommended that the Court deny Plaintiff's request to amend the Complaint to add three new defendants, reasoning that the amended claims would be futile.  (*Id.* at 52–54.)

## II.  Discussion

### a.  Standards of review

#### i.  Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a de novo standard of review.  *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015).  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is

apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments. *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) ("General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." (citation omitted)); *see also DePrima v. N.Y.C. Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

### ii. Motion to dismiss

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Concord Assoc's, L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Finally, the court must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2008) (internal quotation marks omitted) (first citing *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000); and then citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"); *Ferran v. Town of Nassau*, 471 F.3d 363, 369 (2d Cir. 2006) ("This Court will construe briefs submitted by *pro se* litigants liberally.").

### b. Unopposed recommendations

Neither party has opposed Judge Pollak's recommendation that the Court grant Defendant's motion to dismiss Plaintiff's claims for false imprisonment, malicious prosecution, abuse of process and due process violations. The Court has reviewed the unopposed portions of the R&R and, having found no clear error, adopts these portions in their entirety pursuant to 28 U.S.C. § 636(b)(1). Accordingly, the Court dismisses Plaintiff's claims for false imprisonment, malicious prosecution, abuse of process and due process violations.

### c. Defendant's objections to the R&R

Judge Pollak "decline[d] to recommend a dismissal of the Complaint on the grounds of qualified immunity" at the motion to dismiss stage. (R&R 50.) Defendant argues that Judge Pollak erred by recommending that the Court "deny qualified immunity" on Plaintiff's claim that he was unlawfully held past his ME date, because it was "objectively reasonable for [Defendant] to believe that keeping Plaintiff incarcerated past his then established ME date did not violate clearly established law." (*Id.* at 6.) Defendant relies on New York Penal Law section

70.40(3)(a) ("Section 70.40(3)(a)"), which Defendant argues permits the interruption of a parolee's sentence "pending disposition of [] revocation proceedings." (*Id.*) Plaintiff did not respond to Defendant's objections.

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. ---, ---, 135 S. Ct. 2042, 2044 (2015); *see also Garcia*, 779 F.3d at 92 (noting that the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established," *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004), and while there need not be "a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate," *Taylor*, 575 U.S. at ---, 135 S. Ct. at 2044 (quoting *Ashcroft v. al-Kidd*, 563 U.S. ---, ---, 131 S. Ct. 2074, 2083 (2011)).

Given that "qualified immunity is not only a defense to liability, but also provides immunity from suit," a court should resolve a "defendant's entitlement to qualified immunity . . . 'at the earliest possible stage in litigation.'" *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231–32 (2009)). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion" to dismiss, but "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if

'the facts supporting the defense appear on the face of the complaint.'" *Hyman v. Abrams*, 630
F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna v. Wright,* 386 F.3d 432, 435–36 (2d Cir.
2004)).  As a result, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion
instead of a motion for summary judgment must accept [that] . . . the plaintiff is entitled to all
reasonable inferences from the facts alleged, not only those that support his claim, but also those
that defeat the immunity defense." *Id.* (quoting *McKenna,* 386 F.3d at 436).

### i.    Clearly established law

In his opposition to Defendant's motion to dismiss, Plaintiff argued that it was not
objectively reasonable for Defendant to fail to release him upon his ME date because of the
Second Circuit's decision in *Calhoun v. New York State Division of Parole*, 999 F.2d 647 (2d
Cir. 1993), which held that parolees are generally entitled to a final parole revocation hearing
before they are held beyond their original ME date.  (Pl. Opp'n to Def. Mot. ("Pl. Opp'n") 2,
Docket Entry No. 62.)  Defendant argues that the decision in *Calhoun* addressed a subsection of
the Penal Law that has since been amended, and that in view of the amendment, *Calhoun* is
inapplicable to cases like Plaintiff's.  (Def. Objs. 11.)

In *Calhoun*, the Second Circuit addressed the case of a parolee plaintiff who was arrested
for a parole violation two months before his ME date.  *Calhoun*, 999 F.2d at 650.  The plaintiff
was arrested for disorderly conduct and assault, and, five days after being released on bail, he
was arrested for a violation of his parole.  *Id.*  "At this point, under clearly established law, [the
plaintiff] became entitled to two hearings: (1) a preliminary hearing on whether there was
probable cause for the violation-of-parole charge, and (2) a final hearing on whether he was
actually guilty of violating his parole." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 485–88
(1972)).  The plaintiff was declared delinquent as of the date of his arrest.  *Id.*  The Second

Circuit noted that under New York Penal Law section 70.40(3)(a), the declaration of delinquency "interrupted [the plaintiff's] sentence beginning with . . . the date he was alleged to have committed his new crime, and the 'interruption' continued until he was returned to an institution under the jurisdiction of [DOCCS]." *Id.* The court further noted that "[w]here a sentence has been interrupted by a declaration of delinquency, the term of a [parolee's] sentence is 'adjusted,' i.e., extended, beyond the original maximum expiration date for a period of time equal to the interruption period, less one day." *Id.* The *Calhoun* plaintiff's sentence was extended by the five days between his arrest and his incarceration in the county jail, but the extension was "subject to cancellation if, on the final hearing, [the plaintiff's] charged parole violation should be dismissed." *Id.* at 651. Because the plaintiff's ME date was approaching, DOCCS directed that the plaintiff be granted a cancellation of delinquency/maximum expiration, or a "CD/ME." *Id.* The plaintiff was ultimately released from jail on his revised ME date, five days after his original ME date. *Id.*

The plaintiff in *Calhoun* argued that he was denied due process because DOCCS was required either to cancel the five days' delinquency time or to hold a final revocation hearing before his original ME date. *Id.* The Second Circuit agreed, holding that "[t]he state may not extend a prisoner's sentence based on a claimed parole violation, without providing him the final due process hearing required by *Morrissey* when such hearing is practicable." *Id.* at 653. The court recognized that "considerations of timing and practicality become significant when a parole violation comes to light near the end of a parole period," but nevertheless held that the defendants were "constitutionally obliged to hold the final revocation hearing before the original maximum expiration date, or demonstrate that it would have been impracticable to do so." *Id.* at 654. Notwithstanding its holding that the plaintiff had been denied due process, the Second

Circuit held that the defendant parole officers were entitled to qualified immunity because at the time of the alleged violation, few courts had addressed "the particular issue here: whether due process is violated by imposing delinquency time based on a finding of probable cause for a parole violation, and thereby extending a sentence without first providing a revocation hearing." *Id.* However, the Second Circuit noted that "after this opinion is filed, the law will now be clearly established, at least in this circuit, that a [parolee's] prison sentence may not be extended as the result of a charged parole violation, unless the [parolee] is accorded a final due process hearing on that violation when practicable." *Id.* at 655.

When *Calhoun* was decided, Section 70.40(3)(a) stated:

> When a person has violated the terms of his parole and the state board of parole has declared such person to be delinquent, the declaration of delinquency shall interrupt the person's sentence as of the date of the delinquency and such interruption shall continue until the return of the person to an institution under the jurisdiction of the state department of correction.

N.Y. Penal Law § 70.40(3)(a) (1995). That section of the Penal Law has since been amended, and, at the time of the alleged constitutional violation in this case, stated:

> When a person is *alleged to have* violated the terms of presumptive release or parole and the state board of parole has declared such person to be delinquent, the declaration of delinquency shall interrupt the person's sentence as of the date of the delinquency and such interruption shall continue until the return of the person to an institution under the jurisdiction of the state department of corrections and community supervision.

N.Y. Penal Law § 70.40(3)(a) (2011) (emphasis added). Section 70.40(3)(a) operates in connection with section 259-i of the New York Executive Law, which states, in relevant part:

> If the alleged violation is not sustained and the alleged violator is restored to supervision, the interruptions specified in subdivision three of section 70.40 of the penal law shall not apply, but the time spent in custody in any state or local correctional institution shall be credited against the term of the sentence in accordance with the rules specified in paragraph (c) of such subdivision.

14

N.Y. Exec. Law § 259-i(3)(h); *see also* N.Y. Penal Law § 70.40(3)(c) (stating that any time spent in custody from the date of delinquency to the time that service of the sentence resumes will be credited against the term or maximum term of the interrupted sentence, provided certain conditions are met). When the charges that led to the declaration of delinquency are dismissed, the delinquency is "canceled," and the original ME date is reinstated. N.Y. Exec. Law § 259–i(3)(f)(ix).

Defendant argues that the post-*Calhoun* amendment to Section 70.40(3)(a) "extend[s] [a parolee's] ME date until disposition of the revocation proceedings." (Def. Objs. 7.) That argument contravenes *Calhoun*'s holding and is unsupported by case law since *Calhoun*.[9] Nothing in the plain language of Section 70.40(3)(a) suggests that it operates as Defendant argues. Based on the plain language of Section 70.40(3)(a), the amendment clarified that delinquency and subsequent confinement may take effect upon an allegation of a parole violation rather than a final finding of a parole violation. However, the amended Section 70.40(3)(a), like its predecessor, is silent as to whether that delinquency may automatically extend an ME date before a final hearing on the alleged parole violation, which was the issue in *Calhoun*. *See Calhoun*, 999 F.2d at 654 (referring to "the particular issue here: whether due process is violated by imposing delinquency time based on a finding of probable cause for a parole violation, and thereby extending a sentence without first providing a revocation hearing"). In fact, the Second

---

[9] Defendant's argument that a parolee's ME date may be extended until disposition of the revocation proceedings is undermined by its implications to New York Executive Law section 259-i(3)(h) and New York Penal Law section 70.40(3)(c), which together provide a remedial framework by which a parolee whose violation is not sustained receives the delinquency time and custody time credited to his remaining time on parole. If, as Defendant suggests, a parolee's ME date may be extended until disposition of the revocation proceedings, and the revocation proceedings terminate in the parolee's favor, the time-credit framework becomes moot because there will be no remaining time on parole to which time may be credited.

Circuit understood Section 70.40(3)(a) to operate the same way then that it operates now, noting that under that provision, a declaration of delinquency "interrupted [the plaintiff's] sentence beginning with . . . the date he was *alleged* to have committed his new crime, and the 'interruption' continued until he was returned to an institution under the jurisdiction of [DOCCS]." *Id.* at 650 (emphasis added). While the amendment to Section 70.40(3)(a) clarified the date on which a parolee's sentence is interrupted, the decision in *Calhoun* addressed the effect of the period of delinquency on a parolee's ME date — a related, but not coextensive, concern. *See id.* at 652 (affirming the magistrate judge's holding that the plaintiff "had a protectable liberty interest in being released on his maximum expiration date and that the practice of declaring a delinquency upon arrest and thereby extending the maximum expiration date required more process than was given [him]").

Although few courts have considered whether the amendment to Section 70.40(3)(a) alters a parolee's right to a final hearing before his ME date is extended, the Court has identified no law — nor has Defendant presented any — that suggests that the Second Circuit's decision in *Calhoun* applies any less vigorously since Section 70.40(3)(a) was amended. *See, e.g.*, *Sudler v. City of New York*, 689 F.3d 159, 168, 169 n.11 (2d Cir. 2012) (affirming that parolees and prisoners have a liberty interest in serving only the sentence imposed by a sentencing judge and noting that "detention beyond that authorized by law may violate the Eighth Amendment" (citing *Calhoun*, 999 F.2d at 654)); *Dupree v. Pough*, 454 F. Supp. 2d 166, 172 (S.D.N.Y. 2002) ("[I]f the judge had dismissed the alleged parole violations, plaintiff might have had a procedural due process claim under *Calhoun* if the State Division of Parole could not prove that holding a final hearing before [his ME date] would have been impracticable." (citing *Calhoun*, 999 F.2d at 653)).

In the absence of intervening law since *Calhoun*, the Court agrees with Plaintiff that the law in this Circuit has clearly established that parolees are entitled to a final due process hearing on a parole violation before their ME dates are extended.

### ii. Objectively reasonable belief

Defendant argues that because "the plain language of [Section 70.40(3)(a)] establishes the Board of Parole's authority to keep [P]laintiff incarcerated past his ME date upon a declaration of delinquency," it was objectively reasonable for Defendant to believe that "she had no clearly established obligation to have [P]laintiff released prior to the final disposition of his revocation proceedings."  (Def. Objs. 12.)

Qualified immunity extends to circumstances where an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," and applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  As long as a defendant "has an objectively reasonable belief that his actions are lawful," he "is entitled to qualified immunity." *Id.* (quoting *Swartz v. Insogna*, 704 F.3d 105, 109 (2d Cir. 2013)).  While a defendant may assert a qualified immunity defense on a Rule 12(b)(6) motion, "that defense faces a formidable hurdle when advanced on such a motion."  *McKenna*, 386 F.3d at 433.  This is because "the facts supporting the defense [must] appear on the face of the complaint," *id.* at 436, and the plaintiff is "entitled to all reasonable inferences from the facts alleged," *Hyman*, 630 F. App'x at 42 (quoting *McKenna*, 386 F.3d at 436).

The Complaint contains no facts in support of Defendant's qualified immunity defense,

and the Court has already addressed Defendant's argument that the "plain language" of Section 70.40(3)(a) supports such a defense. Plaintiff has alleged that he and his father placed several calls to Defendant and her superiors to inquire into why he was being held past his ME date, and that he was upset and agitated by what he alleged was an unconstitutional detention. (Compl. ¶ 17.) Plaintiff is entitled to the reasonable inference that Defendant received those calls and did not act to intervene in his detention, *see Hyman*, 630 F. App'x at 42 (quoting *McKenna*, 386 F.3d at 436), and Defendant has not argued that she did attempt to intervene or, in fact, that she had even a subjective belief that Plaintiff could lawfully be held beyond his ME date. Defendant instead argues that she had no personal involvement in Plaintiff's continued confinement and that the law was not clearly established in view of the amendment to Section 70.40(3)(a). (Def. Objs. 10–12.)

Assuming that the Complaint contained some suggestion that Defendant subjectively believed it was reasonable to continue Plaintiff's confinement beyond his ME date, Defendant's own exhibits belie that such a belief would be objectively reasonable. At the July 9, 2014 hearing, the parole revocation specialist representing DOCCS, the ALJ and parole counsel for Plaintiff, all appear to have acknowledged that the *Calhoun* decision required Plaintiff to receive a final parole revocation hearing by his ME date of July 31, 2014.[10] (Arraignment Tr. at 9–11.)

---

[10] None of the parties present at Plaintiff's hearing questioned his right to be released by his original ME date in view of *Calhoun*:

> Mr. Kenneth Moore: If I don't take the [plea] offer I'm still gonna get out in (inaudible) or they have to complete my final hearing in twenty[-]two days by my maximum expiration date am I right or am I wrong?
> [The ALJ]: Hold on. Actually that is the Calhoun decision. He's correct.
> Mr. Kenneth Moore: Calhoun.
> (everyone speaking at once, inaudible)

The ALJ identified that, because Newton had taken over two months to investigate the circumstances of Plaintiff's April 12, 2014 arrest, Plaintiff was not arrested on the parole warrant until June 16, 2014. (Arraignment Tr. at 4.) The ALJ noted that, as a result, DOCCS had only six weeks until Plaintiff's ME date of July 31, 2014 to hold both a preliminary hearing and a final parole revocation hearing, under *Calhoun*. (*Id.* ("Alright, so basically it is a CDME, but part of why it worked out that way with the delinquency date is because [DOCCS] didn't diligently move on violating him when he got arrested and the delay brought him closer to the original max date.").) This seemingly uniform understanding that DOCCS was obligated to release Plaintiff upon his original ME date further persuades the Court that granting qualified immunity is improper at this stage. To the extent that Defendant believed that Section 70.40(3)(a) permitted Plaintiff to lawfully be held beyond his ME date, it is far from clear that Defendant's belief was objectively reasonable.

Nevertheless, even if a reasonable parole officer would understand that *Calhoun* prohibits the extension of Plaintiff's ME date without a final hearing, a reasonable parole officer might not believe that Defendant's failure to intervene was unlawful if, as a parole officer, she had no duty or authority to intervene in the detention. Thus, as Judge Pollak correctly explained, the Court

---

> [Parole Revocation Specialist]: The only reason why I'm doing this to make sense is that instead of waiting till the 31st in order for [DOCCS] to let's say not present your case which is even if we didn't present your case by the 31st, then correct me if I'm wrong Judge it takes a few days for that paperwork to be processed and you wouldn't be released exactly on the 31st. However if you take the plea today the paperwork would be completed within the next week and you would be—
> [The ALJ]: Yeah.
> [Parole Revocation Specialist]: Guaranteed a release date of July 31st.

(Arraignment Tr. at 9.)

cannot determine whether a reasonable parole officer would have understood that Defendant's failure to intervene was unlawful where it is not yet clear whether Defendant had the authority or duty to intervene in an unlawful detention. (*See* R&R 50.) Because the defense is premature, the Court accordingly denies without prejudice Defendant's motion to dismiss Plaintiff's Eighth Amendment claim on qualified immunity grounds.

### d. Leave to amend

Judge Pollak recommended that the Court deny as futile Plaintiff's request to amend the Complaint to add claims against three defendants: Garfield Bolton, a parole revocation specialist; Edward Delrio, Bolton's supervisor; and an unidentified Parole Commissioner.[11] (*See* R&R 50–54.) The Court understands Plaintiff to allege that in addition to Defendant, these three additional individuals violated his right to due process and subjected him to cruel and unusual punishment by maintaining his confinement for thirty-nine days beyond his ME date. (Pl. Opp'n 4, 9.) In her reply brief in support of the motion to dismiss, Defendant argues that Plaintiff's proposed amendment would be futile because (1) as to Bolton, parole officers are entitled to absolute immunity when they conduct prosecutorial acts, (2) as to Delrio, Plaintiff did not allege personal involvement, and (3) as to the Parole Commissioner who denied the recommendation to cancel Plaintiff's delinquency prior to the ME date, "it was permissible to keep [P]laintiff incarcerated past his July 31, ME date." (Def. Reply 9–10.)

The R&R explains that Rule 15 of the Federal Rules of Civil Procedure expresses a "strong presumption in favor of allowing amendment," (*id.* at 51), and correctly notes that the Second Circuit has cautioned that amendment should only be denied "for good reason, including

---

[11] Although neither party objected to the recommendation that the Court deny Plaintiff leave to amend the Complaint, the Court addresses it here because, as further explained, the Court construes Plaintiff's claims more broadly than Judge Pollak did in the R&R.

futility, bad faith, undue delay, or undue prejudice to the opposing party," (*id.* (quoting *McCarthy v. Dunn & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007))). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Although the R&R correctly states the standard for leave to amend and futility, it does not discuss "other principles governing motions to amend," for example, "that a *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once, and that a *pro se* plaintiff's proposed amended complaint should be construed to raise the strongest arguments it suggests." *See Grullon v. City of New Haven*, 720 F.3d 133, 140–41 (2d Cir. 2013). The Second Circuit has also repeatedly stated that "a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [s]he has a valid claim." *Garay v. Novartis Pharm. Corp.*, 576 F. App'x 24, 25 (2d Cir. 2014) (internal quotation marks and citation omitted) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). Indeed, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)); *see also Grullon*, 720 F.3d at 139–40 (same); *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) (upholding district court's ruling that *pro se* plaintiff's complaint failed to allege that supervisors "were aware of the violations, that grievances sent to the supervisors notified them of constitutional violations, or that the supervisors acted or failed to act in a way that caused any constitutional violations," but vacating the with-prejudice dismissal and remanding with the instruction that the plaintiff be given leave to replead because "[i]t is possible that [he] could remedy the inadequacies identified

by the district court" (internal quotation marks omitted)).

For the reasons discussed below, the Court finds that a liberal reading of Plaintiff's proposed amendment, in connection with the Complaint and the documents before the Court on the motion to dismiss, indicate that Plaintiff's proposed amendment would not be futile. *See Nielson*, 746 F.3d at 62.

### i. Parole Officer Bolton

Plaintiff alleges that Bolton continued to prosecute or investigate his case past Plaintiff's ME date, with the knowledge that Plaintiff could not be held past his ME date, and that Bolton delayed Plaintiff's final hearing until Bolton had returned from a vacation. (Pl. Opp'n 2–4.) Judge Pollak found that, as to Plaintiff's first argument, because the "decision to initiate parole revocation proceedings would clearly be 'prosecutorial' in nature, . . . Officer Bolton is entitled to absolute immunity." (R&R 52.) Moreover, Judge Pollak found that Plaintiff had not raised a cognizable claim because he had "failed to allege any facts to support his argument that Bolton continued in bad faith to prosecute the case against [P]laintiff other than to allege that Officer Bolton calendared the case for September 5 [2014] because of his vacation plans." (*Id.* at 53.)

"Since qualified [and absolute] immunity is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment, a plaintiff, in order to state a claim of constitutional violation, need not plead facts showing the absence of such a defense." *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996) (first citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); and then citing *Oliver Schools, Inc. v. Foley*, 930 F.2d 248 253 (2d Cir. 1991)); *see also Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 81 (2d Cir. 2015) ("A plaintiff is not required to plead the absence of [an affirmative] defense."); *Grullon*, 720 F.3d at 141 (noting that "failure to exhaust is an affirmative defense,

and inmates are not required to specially plead or demonstrate exhaustion in their complaints." (internal quotation marks omitted) (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007))).  By extension, there is "no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith" so as to overcome a qualified immunity defense.  *Gomez*, 446 U.S. at 640.

Notwithstanding that Defendant bears the burden of pleading an affirmative defense, *see id.* (quoting Fed. R. Civ. P. 8(c)), Defendant asserts merely that "Garfield Bolton, as the Parole Officer who prosecuted plaintiff, is entitled to absolute immunity," (Def. Reply 8).  This is insufficient to carry Defendant's burden of pleading an affirmative defense.  *See Shechter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2d Cir. 1996) (rejecting the defendants' qualified immunity defense where they failed to "demonstrate that the *specific acts at issue* were performed within the scope of their official duties").  Moreover, Plaintiff contests this recitation of Bolton's duties, arguing, in substance, that although Bolton "may be called a prosecutor or specialist," he was acting as an investigator or making a recommendation — neither of which would entitle him to absolute immunity.  (*See* Pl. Opp'n 4–5.)  Because Plaintiff does not bear the burden of refuting an affirmative defense in a complaint and because, in any event, the parties appear to dispute the scope of Bolton's authority and responsibility, the Court declines to deny Plaintiff's request to amend on absolute immunity grounds.

As he did with Newton, Plaintiff need only allege that he suffered a "sufficiently serious" deprivation of rights and that Bolton caused the injury by acting with "deliberate indifference" to Plaintiff.  (*See* R&R 40–41.)  Plaintiff has already alleged that he suffered a sufficiently serious deprivation of rights to withstand a motion to dismiss, (*see id.* at 40), and Plaintiff's opposition to the motion and the transcripts of the hearings suggest that Bolton was aware of Plaintiff's ME

date and assured both the ALJ and Plaintiff's attorney that he would be filing the CD/ME in a

timely fashion to have Plaintiff released before that date, (*see* Final Hr'g Tr. at 7 ("Mr. Bolton:

We are putting in a CD/ME Judge. Mr. Moore's original ME date is 7/31"); Pl. Opp'n 14). A

liberal reading of Plaintiff's proposed amendment indicates that Plaintiff may have a valid

Eighth Amendment claim against Bolton,[12] and the Court accordingly grants Plaintiff leave to

amend the Complaint to add an Eighth Amendment claim against Bolton. *See Nielson*, 746 F.3d

at 62; *see also Grullon*, 720 F.3d at 141 (granting leave to amend where the plaintiff made

allegations outside the complaint that, if incorporated into the amended complaint, could state a

valid claim).

### ii.   Supervising Parole Officer Delrio

Defendant argues that "Plaintiff has asserted no claims against Mr. Delrio other than that

as Bolton's supervisor, he is liable for any violations of [P]laintiff's constitutional rights

committed by Bolton." (Def. Reply 9.) Judge Pollak agreed, finding that "Plaintiff's claims

against [Delrio] are limited to the fact that he was Bolton's supervisor," and there is no

"allegation of personal involvement on the part of Delrio." (R&R 53.)

The Second Circuit has held that "when a *pro se* plaintiff brings a colorable claim against

supervisory personnel, and those supervisory personnel respond with a dispositive motion

grounded in the plaintiff's failure to identify the individuals who were personally involved, under

circumstances in which the plaintiff would not be expected to have that knowledge, dismissal

---

[12]   The Court agrees with Judge Pollak that a due process claim against either Bolton or
Delrio would suffer from the same deficiencies as did the due process claim against Newton —
namely, that their alleged conduct would be deemed "random [and] unauthorized" because
Plaintiff is alleging that they did not comply with state-authorized procedure for release. The
Court therefore adopts Judge Pollak's recommendation to deny Plaintiff leave to amend the due
process claim as to Bolton and Delrio. (*See* R&R 53 n.24.)

should not occur without an opportunity for additional discovery." *Grullon*, 720 F.3d at 141

(quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998)). Here, Plaintiff seeks to state a claim

against Delrio not merely because he is Bolton's supervisor, but because he understood that

Delrio's approval may have been necessary to secure a CD/ME to release Plaintiff. (*See* Pl.

Opp'n 3; Final Hr'g Tr. at 2 ("Mr. Bolton: Well I conferenced this case with Chief Delrio the

circumstances that they charged him and the case and that there's a date for the, the delinquency

date is 7/31/14 and he, he told me to put in a cancellation (inaudible) in this case."); *id.* at 11

("The Court: I'll even send an email to the, to the State Wide Chief, okay, saying that this case

is being submitted for a CDME with your ME being 7/31 okay, and ask Mr. Delrio to personally

oversee it okay?").) Defendant's exhibits therefore present adequate evidence to suggest that

Delrio was personally involved in the decision regarding Plaintiff's release.[13] As with Newton

and Bolton, if Plaintiff can plausibly allege that Delrio was deliberately indifferent to a

---

[13] Delrio was also referred to as a supervisor who could "sign off" on Plaintiff's CD/ME, and, without discovery, Plaintiff cannot know his role in deciding to maintain the parole violation charges beyond Plaintiff's ME date.

> [The ALJ]: Can we please get this guy –
> Mr. Bolton: I'll take care of it tomorrow. I'll be in the office, the Area Sup[ervisor] is supposed to be there –
> [The ALJ]: Well anyone can sign off on a CD right? Eddie [Delrio]'s in the office now. Can you do it today? Send the CD over to Eddie and have it signed.
> Mr. Bolton: I'll see what I can do Judge. See this –
> [The ALJ]: Alright, Mr. Bolton.
> [. . .]
> [The ALJ]: No, no, let's just stay right, no he's not, okay, but honestly I mean, cover your ears, sorry. [DOCCS] fucked this guy over alright? So you have a chance to prosecute to sort of, we can't give back the time that he was on Rikers or anything like that but let's just get him out of here as soon as possible . . . .

(Final Hr'g Tr. at 13.)

sufficiently serious deprivation of Plaintiff's rights, Plaintiff will have stated an Eighth Amendment claim for cruel and unusual punishment.

The Court agrees that Plaintiff's proposed amendment, as written, does not state a claim against Delrio for cruel and unusual punishment. However, because "a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [s]he has a valid claim," *Garay*, 576 F. App'x at 25, the Court grants Plaintiff leave to amend the Complaint to add an Eighth Amendment claim against Delrio.

### iii.   Parole Commissioner

Plaintiff alleges that a Parole Commissioner whose name he cannot identify[14] signed the proposed CD/ME that was intended to release him from confinement by his ME date. (Pl. Opp'n 3.) Plaintiff attached to his letter in opposition to Defendant's motion a copy of the CD/ME recommendation form, (*see* form titled "State of New York-Executive Department-Division of Parole" ("CD/ME Form") at Pl. Opp'n 12), which indicates that Bolton and a deputy chief signed to release Plaintiff before his ME date and, on August 6, 2014, a Parole Commissioner denied the recommendation and decided to "continue [the] violation process," (*id.*). Defendant argues that Plaintiff has not stated a claim against "the unidentified Parole Commissioner because it was permissible to keep [P]laintiff incarcerated past his July 31, ME date." (Def. Reply 10.) Judge Pollak agreed with Defendant, finding that Plaintiff had "failed to articulate sufficient facts regarding this individual's involvement in any deprivation of [P]laintiff's rights"

---

[14]   The legible portions of the signature appear to spell the name of Tina M. Stanford, the chairwoman of the New York Board of Parole.

and that, in any event, absolute immunity would apply to the Parole Commissioner.[15]  (R&R 54.)

A plaintiff can demonstrate the personal involvement of a supervisory defendant by

showing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon*, 720 F.3d at 139 (alterations omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d

Cir. 1995)).

Here, a liberal reading of the proposed amended complaint and the Complaint gives some

"indication that a valid claim might be stated" for both a due process violation and an Eighth

Amendment violation.  *See Nielsen*, 746 F.3d at 62.  The Court understands Plaintiff to allege

that the Parole Commissioner overrode Bolton's recommendation that Plaintiff be released with

---

[15]  As discussed above, immunity is not "relevant to the existence of [P]laintiff's cause of action."  *See Gomez*, 446 U.S. at 640.  Furthermore, it is not clear that, when rejecting the CD/ME, the Parole Commissioner was acting in a capacity that would warrant absolute immunity.  Although parole officers receive absolute immunity "for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers," they do not receive absolute immunity when they perform functions such as "making a recommendation."  *Victory v. Pataki*, 814 F.3d 47, 65 (2d Cir. 2016) (citations omitted) (collecting cases); *see King v. Simpson*, 189 F.3d 284, 288 (2d Cir. 1999) ("The court must conduct '[s]ome factual inquiry' to determine if the duties of the defendants were judicial or prosecutorial, which entitles them to absolute immunity, or administrative, which may entitle them to qualified immunity." (quoting *Stewart v. Lattanzi*, 832 F.2d 12, 13 (2d Cir. 1987) (per curiam))).  Without further factual development about the role of the Parole Commissioner in the extension of Plaintiff's detention, the Court will not make a categorical determination that the Parole Commissioner was acting in a "judicial or prosecutorial" capacity in denying Plaintiff's CD/ME.  *See id.* ("It is unclear whether [the defendant's] alleged action in retarding, or delaying, [the plaintiff's] effective parole date pending a hearing on the . . . report filed against him was an adjudicative function like denying or revoking parole or merely an administrative function like scheduling or making a recommendation.").

a CD/ME, knowing that Plaintiff was entitled either to a final hearing or to be released by his ME date. (Pl. Opp'n 3.) At the pleading stage, Plaintiff is entitled to the reasonable inference that the Parole Commissioner learned, as written on the CD/ME, that Plaintiff "ha[d] not been afforded a Final Hearing," and that his "original maximum expiration date was 7-31-2014." (CD/ME Form.) Plaintiff has also alleged, in substance, that the Parole Commissioner nevertheless "failed to remedy the wrong." *See Grullon*, 720 F.3d at 139. Flaws in the Complaint as to the Parole Commissioner's personal involvement do not, at this stage, appear fatal. The Court therefore grants Plaintiff leave to add an Eighth Amendment claim against the Parole Commissioner if he believes that he can demonstrate the required "deliberate indifference" to support such a claim.

In addition, construing Plaintiff's proposed amendment to raise the strongest claims it suggests, Plaintiff has set forth facts adequate to demonstrate a due process violation, as well. As explained in the R&R, the Second Circuit distinguishes between due process claims "based on established state procedures and . . . claims based on random, unauthorized acts by state employees." (R&R 44 (internal citations omitted) (quoting *Schultz v. Egan*, 103 F. App'x 437, 440 (2d Cir. 2004)).) "Where a claim is based on such 'random, unauthorized acts,' a prisoner's due process rights are not violated 'so long as the government provides a meaningful remedy subsequent to deprivation.'" (*Id.* (quoting *Locurto v. Safir*, 264 F.3d 154, 172 (2d Cir. 2001)).) "The rationale for this principle is plain: because the challenged misconduct is random and unauthorized, it is impossible for the government to anticipate and prevent the wrongful loss of liberty or property in advance, and it has no realistic alternative other than to adopt remedies capable of righting the wrong after the deprivation." (*Id.* (quoting *Schultz*, 103 F. App'x at 441)); *see, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 534 (1984) (holding that only a

post-deprivation remedy was required following the intentional destruction of an inmate's personal property by a prison guard because the state was "not in a position to provide for predeprivation process"); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981) (holding that loss of a prisoner's mail-order product was a negligent, random, and unauthorized act by a prison employee, and a post-deprivation tort suit was sufficient to satisfy due process), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

The "random and unauthorized" exception to the requirement of a pre-deprivation hearing does not apply, however, where the government actor in question is "a high-ranking official with 'final authority over significant matters.'" *DiBlasio v. Novello*, 344 F.3d 292, 302–03 (2d Cir. 2003) (quoting *Burtnieks v. City of New York*, 716 F.2d 982, 988 (2d Cir. 1983)). The Second Circuit has explained that this is because "the state acts through its high-level officials." *Id.* (citing *Burnieks*, 716 F.2d at 988). Stated differently, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post[-]deprivation procedures will not, ipso facto, satisfy due process." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (first citing *Hudson*, 468 U.S. at 532; and then citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982)).

Judge Pollak noted in the R&R that although Plaintiff possessed a liberty interest as a parolee and was entitled to due process before his parole was revoked, Plaintiff's due process claim against Defendant must fail because Defendant's "failure to intervene to secure [P]laintiff's release . . . would arguably be a 'random, unauthorized act' for which the availability of a post-deprivation remedy such as an Article 78 or habeas proceeding under state law would be sufficient to satisfy due process requirements." (R&R 44–45.) While this may be

true with respect to a parole officer, the same reasoning does not necessarily apply to a Parole Commissioner. *See DiBlasio*, 344 F.3d at 303 (holding that because the commissioner of the New York Department of Health is a "high-level state official with final authority on many department matters, . . . it would make little sense to characterize her public statements as 'random and unauthorized'").

Moreover, Defendant's principal argument is not that Defendant's acts — or those of the Parole Commissioner — were random and unauthorized, but rather that they comported with established DOCCS policy that supports the allegedly unconstitutional detention of Plaintiff beyond his ME date. (*See* Def. Mem. 16–18, 23 (arguing that because of the amendment to Section 70.40(3)(a), "DOCCS may adjust [a] parolee's release date even if the charges are ultimately not sustained at a final hearing and that action will not result in a due process violation"); Def. Reply 10 ("Nor has [P]laintiff stated a claim against the unidentified Parole Commissioner because it was permissible to keep [P]laintiff incarcerated past his July 31, ME date."); Def. Objs. 12 (arguing that "the plain language of the Penal Law establishes the Board of Parole's authority to keep [P]laintiff incarcerated past his ME date upon a declaration of delinquency"). Because Defendant has argued that "the deprivation occur[ed] in the more structured environment of established state procedures," *Hellenic Am. Neighborhood*, 101 F.3d at 880, and because the Parole Commissioner may be "a high-ranking official with final authority over significant matters" *DiBlasio*, 344 F.3d at 302–03 (internal quotation marks omitted), the Court grants Plaintiff leave to add a due process claim against the Parole Commissioner.

### III. Conclusion

For the foregoing reasons, the Court adopts Judge Pollak's R&R except as to the recommendation that Plaintiff be denied leave to amend the Complaint. The Court grants Defendant's motion to dismiss Plaintiff's claims for false imprisonment, malicious prosecution, abuse of process and due process violations, and denies Defendant's motion to dismiss Plaintiff's claim for cruel and unusual punishment. The Court also grants Plaintiff leave to amend the Complaint to add claims for cruel and unusual punishment against Bolton, Delrio and the Parole Commissioner, and to add a due process claim against the Parole Commissioner. Plaintiff is granted forty-five (45) days from the date of this Memorandum and Order to file the amended complaint, which will replace the existing Complaint in its entirety.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  December 1, 2016
        Brooklyn, New York