UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KENNETH E. MOORE,

                Plaintiff,

      v.

DANA NEWTON, et al.,

                Defendants.

1:14-cv-06473-MKB-CLP

## SECOND AMENDED COMPLAINT

Plaintiff Kenneth E. Moore, by and through his counsel, brings this Second Amended Complaint against New York Department of Corrections and Community Supervision ("DOCCS") employees Dana Newton, Garfield Bolton, Edward Delrio; and Chairwoman of the New York Board of Parole Tina M. Stanford (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. Kenneth E. Moore ("Plaintiff" or "Mr. Moore") brings this civil rights action for damages pursuant to 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution.

2. The claims in this lawsuit arise from the unlawful imprisonment of Mr. Moore for 39 days beyond the expiration of his sentence—from August 1, 2014 to September 9, 2014—without due process of law.

3. On October 1, 2013, Mr. Moore was released from Queensboro Correctional Facility to post-release supervision. Mr. Moore's sentence and term of post-release supervision

was to expire on July 31, 2014 (his "maximum expiration date"). On June 16, 2014, Defendant Dana Newton arrested Mr. Moore for an alleged parole violation and transferred him to Rikers Island. Under clearly established law, Mr. Moore was entitled to receive a final revocation hearing on the parole violation charge on or before July 31, 2014 if he was to be detained past his maximum expiration date.

4.  Despite being on notice of Mr. Moore's maximum expiration date, Defendants failed to provide Mr. Moore with a final parole revocation hearing on or before July 31, 2014. After July 31, 2014, Defendants took no action or ineffectual action and allowed the unconstitutional detention of Mr. Moore to continue until September 9, 2014, when he was released from Rikers Island. As a result, Mr. Moore's imprisonment beginning on August 1, 2014 through September 9, 2014 violated his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment right to not be deprived of liberty without due process of law.

## JURISDICTION

5.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

## VENUE

6.  Venue for this civil action is proper under 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events giving rise to Mr. Moore's claims occurred in this district.

## PARTIES

7.  Mr. Moore is, and was at all relevant times mentioned herein, a resident of New York State and a citizen of the United States. From July 31, 2014 to September 9, 2014, Mr. Moore was unlawfully imprisoned on Rikers Island in New York.

8. On information and belief, Defendant Dana Newton ("Defendant Newton") was a parole officer employed by DOCCS, acting as an agent and employee of the State of New York within the scope of her employment and under color of state law. At all relevant times hereto, Defendant Newton worked at the Brooklyn V Area Office and supervised Mr. Moore throughout his term of supervised release. Defendant Newton is sued in her personal capacity.

9. On information and belief, Defendant Garfield Bolton ("Defendant Bolton") was a parole revocation specialist employed by DOCCS, acting as an agent and employee of the State of New York within the scope of his employment and under color of state law. At all relevant times hereto, Defendant Bolton represented DOCCS in parole revocation proceedings relating to Mr. Moore's alleged parole violation. Defendant Bolton is sued in his personal capacity.

10. On information and belief, Defendant Edward Delrio ("Defendant Delrio") was a Supervising Parole Officer employed by DOCCS, acting as an agent and employee of the State of New York within the scope of his employment and under color of state law. At all relevant times hereto, Defendant Delrio supervised Defendant Bolton and oversaw Mr. Moore's parole revocation process. Defendant Delrio is sued in his personal capacity.

11. On information and belief, Defendant Tina M. Stanford ("Defendant Stanford") is the Chairwoman of the Board of Parole, appointed by Governor Andrew M. Cuomo, and acting as an agent and employee of New York State within the scope of her employment and under color of state law. At all relevant times hereto, Defendant Stanford was directly involved in the processing of Mr. Moore's case, including the denial of Defendant Bolton's recommendation to cancel Mr. Moore's parole violation charge. Defendant Stanford is sued in her personal capacity.

## STATEMENT OF FACTS

12. On October 1, 2013, Mr. Moore was released from Queensboro Correctional Facility to a period of post-release supervision that was scheduled to expire on July 31, 2014. The terms of Mr. Moore's supervised release required him to report to Defendant Newton on a bi-weekly basis.

13. On April 12, 2014, Mr. Moore was arrested by Officer Juner Cevallos[1] of the New York City Police Department and charged with Criminal Possession of a Controlled Substance in the Seventh Degree. Mr. Moore was arraigned and released on his own recognizance on April 14, 2014.

14. That very same day, on April 14, 2014, Mr. Moore reported his arrest to an on-duty parole officer in the Brooklyn V Area Office. The parole officer told Mr. Moore to return at a later date when Defendant Newton was working, and Mr. Moore returned as instructed. As a consequence of the arrest, Defendant Newton ordered Mr. Moore to report to her on a weekly, rather than bi-weekly, basis. Mr. Moore accordingly reported to Defendant Newton on a weekly basis for the following two months.

15. In one or more subsequent meetings in late April and May 2014, Defendant Newton advised Mr. Moore to voluntarily enter a residential substance abuse treatment program at Edgecombe Correctional facility. Mr. Moore declined, professing his innocence to the criminal charge, and denied having a substance abuse problem. Defendant Newton took no further actions against Mr. Moore between April and June 16, 2014.

16. On June 16, 2014, during a scheduled parole visit, Defendant Newton arrested Mr. Moore for violating the conditions and terms of his parole release. The charge was based

---

[1] Mr. Moore has settled his claims for false arrest and malicious prosecution against Officer Cevallos.

only on Mr. Moore's April 12, 2014 arrest—over two months earlier—for allegedly possessing a controlled substance. Mr. Moore was transported to Rikers Island pending parole revocation proceedings.

17. On June 26, 2014, a preliminary parole revocation hearing was convened on Rikers Island. Defendant Newton appeared on behalf of DOCCS. Three New York City Police Officers were called as witnesses. At the conclusion of the hearing, probable cause was found, and a final revocation hearing was scheduled for July 9, 2014.

18. On July 9, 2014, Mr. Moore appeared before Administrative Law Judge ("ALJ") Casey. The transcript of the hearing is attached hereto as Exhibit A. During the hearing, all parties including ALJ Casey, agreed that Mr. Moore had completed his underlying criminal sentence and that his unadjusted post-release supervision maximum expiration date was July 31, 2014. ALJ Casey confirmed that under the "*Calhoun* decision," DOCCS had to provide Mr. Moore with a final parole revocation hearing on or before July 31, 2014, or Mr. Moore would have to be released from custody on that date. (Exhibit A at 9:6-11.) After Mr. Moore refused to plead guilty to a parole violation, ALJ Casey fast-tracked proceedings and scheduled a contested final parole revocation hearing for July 23, 2014. Mr. Moore's case was assigned to Defendant Bolton, and ALJ Casey issued an order directing the prosecution to provide discovery to Mr. Moore and his counsel.

19. Mr. Moore appeared for his final revocation hearing on July 23, 2014 represented by an attorney from the Legal Aid Society. The transcript of the hearing is attached hereto as Exhibit B. Defendant Bolton was present for DOCCS. At the hearing, Defendant Bolton indicated that he was not prepared to proceed with a final contested hearing against Mr. Moore. (Exhibit B at 2:8-6:10.)

20. Instead, Defendant Bolton stated on the record that his supervisor, Defendant Delrio, instructed him to place a cancellation of delinquency and close the case by Mr. Moore's maximum expiration date. (*Id.* at 2:8-5:20.) Based on this representation, ALJ Casey adjourned Mr. Moore's final parole revocation hearing with the expectation that Defendant Bolton would promptly submit the paperwork necessary to effectuate Mr. Moore's agreed-upon release on or before July 31, 2014. Mr. Moore was assured that no further adjournments would be issued in the case and he would be released by, or around, July 31, 2014. (*Id.* at 8:11-9:16; 10:3-10:4.)

21. After Mr. Moore departed the hearing room, ALJ Casey, Defendant Bolton and Mr. Moore's counsel discussed Mr. Moore's release. On the record, Defendant Bolton assured ALJ Casey that he would "take care of [the paperwork] tomorrow. I'll be in the office, the Area Sup[ervisor] is suppose[d] to be there[.]" (*Id.* at 12:16-12:18.) The ALJ said "[w]ell anyone can sign off on a CD right? [Defendant] Eddie [Delrio]'s in the office now. Can you do it today? Send the CD over to Eddie and have it signed." (*Id.* at 12:19-12:21.) Defendant Bolton responded that he would "see what I can do[.]" (*Id.* at 12:22.)

22. To ensure that Mr. Moore would be released as agreed by, or around, July 31, 2014, ALJ Casey set an August 6, 2014 "control date" and requested that the parties appear before him in the event that Mr. Moore remained in custody. Upon information and belief, no such conference occurred on or around August 6, 2014.

23. On July 25, 2014, Defendant Bolton and Area Supervisor Lewis Squillacioti issued a recommendation to the Board of Parole to cancel the delinquency declaration on Mr. Moore and release him by his maximum expiration date ("CD/ME"). In the recommendation, the authors explicitly noted that Mr. Moore had "not been afforded a Final Hearing. [Mr. Moore's] original maximum expiration date was 7-31-2014 and his estimated maximum

6

expiration date was 10-5-14." (Exhibit C at 1.) The recommendation is attached hereto as Exhibit C.

24. Later the same day, on July 25, 2014, the Board of Parole received the CD/ME recommendation to cancel the delinquency declaration on Mr. Moore and release him by his July 31, 2014 maximum expiration date. Despite the clear notice in the recommendation that Mr. Moore's maximum expiration date was less than a week away and that he had not been afforded a Final Hearing, the recommendation was not acted on until August 6, 2014—a full week after Mr. Moore's maximum expiration date—at which time, Defendant Stanford denied the CD/ME recommendation in violation of clear and undisputed law. Notwithstanding clear law, as set forth in *Calhoun*[2] and acknowledged by ALJ Casey at the July 9, 2014 hearing establishing the DOCCS' lack of authority over Mr. Moore, Defendant Stanford ordered the parole violation process to continue against Mr. Moore.

25. After July 31, 2014 came and went while he remained detained unlawfully, Mr. Moore's anxiety level sky-rocketed as he knew he should have been released in light of the assurances given by ALJ Casey and Defendant Bolton at the July 23rd hearing. At the same time, he gave widespread notice of his unlawful detention, as he took repeated actions to effectuate his release from Rikers Island. Mr. Moore spoke to prison officers, placed phone calls to Parole Officers, and wrote letters seeking to obtain additional information and to expedite his release from incarceration.

26. As part of an on-going effort to secure his release, Mr. Moore contacted Defendant Newton, Defendant Newton's Supervisor, NYS Assembly Member Jeffrion Aubry, and Mr. Moore's parole attorney at the Legal Aid Society, Jean Pierre Nogues. Mr. Moore's

---

[2] *Calhoun* v. *N.Y. State Div. of Parole Officers*, 999 F.3d 647, 653 (2d Cir. 1993).

7

father, Curtis Moore, also spoke to employees of DOCCS, including Defendant Delrio and Area Supervisor Lewis Squillacioti, requesting information about the status of Mr. Moore's release from incarceration.

27. Throughout August 2014, Mr. Nogues communicated multiple times with Defendant Bolton and his supervisor regarding Mr. Moore's status. On or around August 18, 2014, Mr. Nogues learned that Defendant Bolton was instructed by his supervisor to go forward with a contested hearing on Mr. Moore's parole violation, contravening the representations made to ALJ Casey on July 23, 2014. When Mr. Nogues also learned that Defendant Bolton would be on vacation until September 5, he demanded that Bolton's supervisor conduct the hearing on an earlier date in his absence. Even in the face of this clear request while Mr. Moore remained detained unlawfully, Defendant Bolton and his supervisor took no steps to ensure Mr. Moore received a prompt hearing.

28. Consequently, on August 20, 2014, Mr. Nogues filed a state writ of habeas corpus on behalf of Plaintiff on the ground that Mr. Moore was unconstitutionally incarcerated past the maximum expiration of his post-release supervision term.

29. Without prior notice to Mr. Moore or his counsel, on September 5, 2014, Mr. Moore's case was called at the parole court. Mr. Moore received no notice of the hearing and thus was not afforded an opportunity to attend this hearing. Mr. Moore's counsel, Mr. Nogues, happened to be in court for another matter and was able to attend on his behalf. Defendant Bolton indicated that he was not prepared to proceed with charges against Mr. Moore. ALJ Casey refused to adjourn the hearing and insisted that Defendant Bolton present his case.

After Defendant Bolton failed to produce any evidence against Mr. Moore at the hearing, ALJ Casey found that DOCCS failed to prove its case against Mr. Moore and ordered his release.[3]

30. Mr. Moore was released from Rikers Island four days later on September 9, 2014, after serving an extra 39 days unlawfully detained in prison past his maximum expiration date of July 31, 2014.

31. On October 22, 2014, the criminal charge for possession against Mr. Moore that was the sole ground of his supposed parole violation also was dismissed in Brooklyn Criminal Court.

## CLAIMS FOR RELIEF

### COUNT I:
**Deliberate Indifference, in Violation of the Eighth and Fourteenth Amendments of the Constitution (42 U.S.C. § 1983) (against each Defendant)**

32. Plaintiff re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

33. By reason of the foregoing, Mr. Moore was unlawfully detained past his maximum expiration date of July 31, 2014 for 39 days. Unlawful detention of this magnitude constitutes an objectively serious injury, and deprived Mr. Moore of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, including, but not limited to, the rights provided through the Eighth and Fourteenth Amendment of the United States Constitution not to be subjected to cruel and unusual punishment.

34. Acting under pretense and color of state law, in their official capacities and within the scope of their employment as New York State employees, each Defendant displayed deliberate indifference to Mr. Moore's unconstitutional confinement. Specifically, each and

---

[3] To date, DOCCS has not produced a transcript of the September 5, 2014 hearing.

every named Defendant had direct knowledge of Mr. Moore's maximum expiration date of July 31, 2014, and the fact that Mr. Moore remained imprisoned well after it.

35. Rather than take any affirmative steps to relieve Mr. Moore's unconstitutional injury, each Defendant either failed to act, took ineffectual action under the circumstances, or acted to further Mr. Moore's injury. Such conduct was a product of deliberate indifference to Mr. Moore's unlawful confinement, and thus in violation of Mr. Moore's constitutional rights under the Eighth and Fourteenth Amendments of the United States Constitution, as secured by 42 U.S.C. § 1983.

36. As a direct and proximate result of the foregoing, Mr. Moore suffered wrongful violations of his constitutional rights, as well as psychological injury, mental anguish and emotional distress, and was otherwise damaged and injured.

## COUNT II
**Deprivation of Liberty Without Due Process of Law, in Violation of the Fourteenth Amendments of the Constitution (42 U.S.C. § 1983) (against Defendant Stanford)**

37. Plaintiff re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

38. Under the Fourteenth Amendment, Mr. Moore has an undeniable liberty interest in being released from prison upon expiration of his maximum term of imprisonment. Prior to being deprived of this liberty interest, he must be afforded due process of law. Due process required that Mr. Moore receive a final revocation hearing, and be adjudged guilty of a parole violation prior to being incarcerated past his maximum expiration date of July 31, 2014. Mr. Moore, however, never received a timely final revocation hearing, and was deprived of his liberty in violation of due process.

39. Defendant Stanford directly caused and exacerbated Mr. Moore's unconstitutional deprivation of liberty. Despite being made aware of Mr. Moore's maximum expiration date, on August 6, 2014, Defendant Stanford, while acting under pretense and color of state law, ordered the continued detention of Mr. Moore. Defendant Stanford's conduct represents a per se violation of Mr. Moore's Fourteenth Amendment rights.

40. Defendant Stanford's conduct was not simply a random or unauthorized act by a state employee. Rather, as a high-ranking official with ultimate decision-making power and final authority over significant matters, Defendant Stanford spoke for the entire Board of Parole in deciding to violate Mr. Moore's constitutional rights.

41. As a direct and proximate result of the foregoing, Mr. Moore suffered wrongful violation of his constitutional rights, psychological injury, mental anguish and emotional distress, and was otherwise damaged and injured.

## **PRAYER FOR RELIEF**

42. WHEREFORE Mr. Moore respectfully requests:

A. Compensatory damages for the injuries Mr. Moore has suffered in an amount to be determined at trial;

B. Punitive damages in an amount to be determined at trial;

C. Judgment be entered against Defendants in favor of Mr. Moore for the costs of the litigation, including reasonable attorneys' fees under 42 U.S.C. § 1988;

D. The Court award Mr. Moore any further relief that the Court deems appropriate.

## JURY TRIAL DEMAND

Mr. Moore, by his undersigned counsel and pursuant to Federal Rule of Civil Procedure 38(b), hereby respectfully requests trial by jury on all claims so triable in this action.

DATED: March 2, 2018                     Respectfully submitted,

 /s/ *Wen-Ying Angela Chang*
Wen-Ying Angela Chang
Yevgeniy Zilberman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Fax: (212) 558-3588
changw@sullcrom.com
zilbermany@sullcrom.com

*Counsel for Plaintiff Kenneth E. Moore*